OPINION OF THE COURT
Matthew J. D’Emic, J.
Defendant moves for an order dismissing the special proceeding brought by the Commissioner of the New York State Office of Mental Health seeking an order to convert defendant from criminal status to civil status pursuant to Jackson v Indiana (406 US 715 [1972]). The court has considered the papers of the Mental Hygiene Legal Service, Second Department representing defendant and the New York State Office of the Attorney General representing the New York State Office of Mental Health and the Kirby Forensic Psychiatric Center (KFPC) (collectively, the State). For the following reasons, defendant’s motion is denied.
Background
Defendant was arrested on March 17, 2014 and charged with assault in the second degree (Penal Law § 120.05), an offense that carries a maximum prison term of seven years. He was subsequently adjudicated an incapacitated person pursuant to Criminal Procedure Law article 730 on October 16, 2014 and committed to the custody of the Commissioner of the Office of Mental Health for a period of up to one year to attempt to restore his capacity to stand trial. Since that time defendant has been held at KFPC pursuant to CPL 730.50 and multiple retention orders have been issued to continue defendant’s commitment. He has been diagnosed with schizophrenia and major neurocognitive disorder. Treatment reports indicate that defendant has an extensive psychiatric history dating back to 1975 and that while medication presently has affected his psychotic symptoms somewhat, defendant’s cognitive problems have not improved. According to the reports, defendant’s severe cognitive deficits prevent him from understanding the trial process and the charges against him, reaching the conclusion that it is unlikely that he will be restored to fitness in the foreseeable future. Accordingly, by motion dated May 16, 2016, *1143 the Commissioner of the New York State Office of Mental Health moved under Jackson v Indiana for an order converting defendant to civil status pursuant to article 9 of the Mental Hygiene Law.
Defendant seeks an order dismissing the special proceeding brought by the State, claiming that the right to seek conversion to civil status belongs only to him, not the State, and thus cannot be asserted against his wishes. Defendant seeks to remain in criminal commitment until the statutory expiration of his term of commitment in 2019, under CPL 730.50 (3), which limits the aggregate retention period to two thirds of the maximum sentence for the top count. Pursuant to CPL 730.50 (4), once this maximum retention period is reached the indictment must be dismissed. Defendant argues that the commencement of a Jackson proceeding before this expiration date violates his due process rights because he will not qualify for an automatic dismissal of the charges. He also contends that a conversion to civil status will deny him access to the periodic review procedures afforded by CPL 730.50 as well as deprive him of the possibility of applying any time under civil confinement towards his criminal commitment should it ever be reinstated. Finally, defendant asserts strongly that the shift to civil commitment without his consent will strip him of substantial liberty interests.
The State argues that, under Jackson, it is obligated under due process to either release the defendant or institute civil commitment proceedings against him where there is no substantial likelihood that the incapacitated defendant will regain his capacity in the foreseeable future. The State further contends that the defendant has no such right to have the indictment against him dismissed pursuant to CPL 730.50 (3). According to the State, defendant has no due process right to dismissal of the indictment; rather, he has a right to be converted to civil status because it has been determined that it is unlikely that he will ever be restored to fitness.
Legal Analysis
In Jackson v Indiana, the Supreme Court held
“that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held for more than the reasonable period of time necessary to determine whether there is a substantial prob *1144 ability that he will attain capacity in the foreseeable future” (Jackson at 738).
Where the court determines that this is not the case, due process requires that
“the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal” (id.).
The Supreme Court reasoned that this redress was necessary to protect the liberty interests of those mentally ill persons held in criminal confinement, accused of crimes but convicted of no offense, yet unable to be brought to trial by the State due to their incapacity. Thus, due process requires the nature and duration of commitment to bear some reasonable relation to the purpose for which the individual was committed, specifically in the case of a criminal commitment, for the achievement of fitness to proceed to trial (id.).
New York has not codified Jackson but nevertheless applies its principles. The statutory provisions of CPL article 730 reach the same end of civil commitment but by a somewhat different path. An incompetent defendant may be committed pursuant to CPL article 730 when it has been determined that he is not able to stand trial, and retention orders may be issued should the defendant remain incapacitated. CPL 730.50 (5) limits the aggregate retention period, which may “not exceed two-thirds of the authorized maximum term of imprisonment for the highest class felony charged in the indictment.” When the length of custody reaches that level, the criminal action pending against defendant terminates and the indictment must be dismissed (CPL 730.50 [4]). Should the Mental Health Commissioner determine that an incapacitated defendant is still in need of care and treatment on the expiration date, CPL 730.70 sets forth the right of the Commissioner of the Office of Mental Health to seek civil commitment under the provisions of the Mental Hygiene Law, only after the termination of criminal proceedings.
The Court of Appeals has held that the requirements in Jackson must be read into article 730, such that a defendant who is unfit to stand trial is entitled to be released or civilly committed pursuant to article 9 of the Mental Hygiene Law *1145 upon a determination that his chances of achieving competency are “minimal” or “nonexistent” (People v Schaffer, 86 NY2d 460, 468 [1995], citing Jackson at 727). In reading Jackson’s requirements into CPL article 730, the Court of Appeals has further clarified that Jackson relief may be sought before the expiration of the maximum authorized commitment periods under CPL 730.50 (5). “The vindication of a permanently incompetent defendant’s constitutional rights under Jackson v Indiana cannot be compelled to await the statutory commitment periods.” (Schaffer at 468.) Thus, New York law does not grant a defendant the right to remain in criminal custody pursuant to CPL article 730 once it has been firmly determined that he has little or no chance of achieving competency.
The Jackson Court did not address the fate of the pending indictment, leaving that determination to the Indiana state court. The disposition of the charges after the granting of Jackson relief and whether a defendant is entitled to dismissal under CPL article 730 are the key questions here. The Court of Appeals, however, has determined a defendant who has been released as a result of Jackson is not automatically entitled to a dismissal of the charges (Schaffer at 468). The Court of Appeals expressly held,
“[t] hough an incompetent defendant who is unlikely to achieve competency in the future may have a constitutional right not to be held in custody based solely on the fact that a Grand Jury has issued an indictment, such defendant does not have a corollary right to dismissal of the charges given the public’s countervailing interest in the court’s continuing jurisdiction over the defendant to monitor the defendant’s condition and location” (Schaffer at 468-469).
The Schaffer court thus rejected the defense argument that Jackson v Indiana mandated dismissal of the indictment on constitutional grounds when defendant is held pursuant to CPL article 730 for extended periods of evaluation and possibly treatment.
In People v Lewis (95 NY2d 539 [2000]), the Court of Appeals denied a defendant’s motion to dismiss the indictment long after a Jackson proceeding resulted in his civil commitment. The Court first reinforced Schaffer by stating “that release or civil commitment under Jackson could be sought and obtained prior to the expiration of the maximum authorized commitment *1146 periods under article 730” (Lewis at 545). But the main thrust of the Court’s opinion was that defendant was not entitled to the statutory benefit of CPL 730.50 because his custodial retention was under a civil order and the provisions of CPL article 730 only apply to a criminal commitment. The Court explained that “denying a defendant who has obtained Jackson relief the benefit of a CPL 730.50 dismissal of the indictment does not place an unwarranted and impermissible burden on the exercise of a constitutional right.” (Lewis at 549.) The Court further noted the benefits of conversion to civil status, where a defendant may be eligible for release under a less stringent standard, irrespective of any continued unfitness to stand trial.
“[R]ather than an impermissible burden on the exercise of his constitutional rights, defendant has only exchanged his right to automatic dismissal of the indictment against him—after criminal commitment under an order issued pursuant to CPL 730.50 for the requisite time period—for the benefits of civil commitment well before the expiration of that time period” (id.).
While defendant has no right to automatic dismissal of the indictment via CPL 730.50 (4), allowing the indictment to stand even after the granting of Jackson relief does not mean that the defendant has no other means of obtaining dismissal. In fact, defendant may apply now for dismissal of the indictment via CPL 730.60 (5), wherein the court may find that dismissal is “consistent with the ends of justice.” Such a dismissal constitutes a bar to any further prosecution of the charges in the indictment. Once a defendant has been converted to civil status following Jackson and article 9 hearings, he may also seek relief through a constitutional speedy trial claim or a CPL 210.40 motion to dismiss in the interest of justice. Considering the valid interest of the District Attorney to protect the public, it cannot be argued, as defendant does here, that requiring the consent of the People to dismiss the indictment places an undue burden on the defendant’s exercise of his constitutional rights.
The combined effect of Jackson, Schaffer, and Lewis is to require the State to seek the defendant’s civil commitment or release when his return to competency becomes increasingly unlikely. At that point both federal and state law clearly mandate that the State proceed on an alternate path to the provisions of CPL article 730 and not wait for the statutory criminal commitment period to mature. The substantial liberty *1147 interests that defendant envisions as carrying great weight do not impinge on that obligation because they only apply to defendant’s criminal commitment which is fast receding into the past.
Admittedly the court has reached a conclusion at odds with its prior decision in People v Miliokow (18 Misc 3d 816 [Sup Ct, Kings County 2008]). Upon reflection and after reconsidering the interaction of CPL article 730 with the Jackson doctrine, the court has abandoned its decision in Miliokov in favor of the State of New York and the granting of a Jackson hearing.
Accordingly, defendant’s motion to dismiss the State’s application for an order seeking to convert his status to civil commitment pursuant to Jackson v Indiana is denied.